**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| Atlas Global Technologies LLC,<br><br>Plaintiff,<br><br>v.<br><br>Walmart Inc.<br><br>Defendant. | Civil Action No. 6:26-cv-00503<br><br>Jury Trial Demanded |

# COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Atlas Global Technologies LLC ("Atlas") files this Complaint against Walmart Inc. ("Walmart") for infringement of U.S. Patent Nos. 9,532,187 ("the '187 patent"), 9,641,234 ("the '234 patent"), 9,763,259 ("the '259 patent"), 9,825,738 ("the '738 patent"), and 9,912,513 ("the '513 patent"). The '187 patent, '234 patent, '259 patent, '738 patent, and '513 patent are referred to collectively as the "patents-in-suit."

## THE PARTIES

1. Plaintiff Atlas is a limited liability company organized under the laws of Texas with its principal place of business at 3050 Tamarron Blvd., Unit 3305, Austin, TX 78746.

2. Defendant Walmart is a Delaware corporation headquartered at 702 S.W. 8th Street, Bentonville, Arkansas 72716. Walmart maintains a substantial corporate presence in the State of Texas and in this District. For example, Walmart maintains regular and established places of business in this District via its numerous retail units and supply chain facilities at, for example, 425 Coit Rd., Plano, TX 75075; 6000 Coit Rd., Plano, TX 75023; 6001 N. Central Expy., Plano, TX 75023; 8555 Preston Rd., Frisco, TX 75034; 355 Stonebrook Pkwy., Frisco, TX 75036;

16600 FM 423, Frisco, TX 75034; 12220 FM 423, Frisco, TX 75033; 16066 State Highway 121, Frisco, TX 75035; 730 W. Exchange Pkwy., Allen, TX 75013; 1701 E. End Blvd. N., Marshall, TX 75670; 2120 Stemmons Fwy., Sanger, TX 76266; 8660 US-79 S., Palestine, TX 75803; and 14863 Farm to Market Rd 645, Palestine, TX 75803.[1] Walmart also operates and owns an online store (accessible via https://www.walmart.com/) through which Walmart markets, offers, sells, offers to sell, distributes, provides, and imports, throughout and into the United States, the State of Texas, and this District, numerous products that comply with, implement, support, or utilize the Institute of Electrical and Electronics Engineers' ("IEEE") 802.11ax™-2021 ("Wi-Fi 6") Standard and operate on Wi-Fi 6 and Wi-Fi 6E networks. Walmart may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3. Walmart is the largest employer in Texas.[2] It maintains 595 retail units and 22 supply chain facilities in Texas.[3]

---

[1] https://www.walmart.com/store-directory/tx/ (last accessed October 8, 2026); https://maps.app.goo.gl/3RCrocsS5trHTVUg8 (last accessed October 8, 2026); https://maps.app.goo.gl/fAzrBkr1rmu2pBo4A (last accessed October 8, 2026); https://maps.app.goo.gl/8EXLvrtH6oYd92A99 (last accessed October 8, 2026).

[2] https://worldpopulationreview.com/state-rankings/largest-employer-by-state (last accessed October 8, 2026).

[3] https://corporate.walmart.com/about/location-facts/united-states/texas (last accessed October 8, 2026).

## Texas by the Numbers

### Our Footprint

| | | | |
|---|---|---|---|
| Total Retail Units[1] | 595 | Supply Chain Facilities[2] | 22 |

| | | | | | |
|---|---|---|---|---|---|
| Supercenters | 395 | Discount Stores | 18 | Neighborhood Markets | 96 |
| Sam's Club | 82 | Pharmacies | 591 | Walmart Fuel Stations | 102 |

### Investing in American businesses

Spent with suppliers[3]
**$106.8 B**

Number of suppliers
**2,509**

Supplier jobs supported
**219,404**

### Empowering communities

Total donations (Walmart, Sam's Club, Walmart Foundation)[4]
**$205.4 M**

Pounds of food donated[5]
**100.2 M**

Equivalent meals donated[6]
**83.5 M**

### Working at Walmart

Associates in Texas[7]
**178,823**

Average wage[8]
**$18.92**

Hourly associates promoted[9]
**11,500**

4. On December 3, 2024, Walmart completed its acquisition of Vizio Holding Corp. ("Vizio"). As a result of this acquisition, Vizio became a wholly owned subsidiary of Walmart and Seth Dallaire, the Executive Vice President and Chief Growth Officer of Walmart,[4] was elected as the sole director of Vizio.[5] On information and belief, since at least the end of 2025, Vizio-branded TVs are available for purchase in the United States only through Walmart.[6] Further, Walmart's

---

[4] https://corporate.walmart.com/about/leadership/seth-dallaire (last accessed October 8, 2026).
[5] https://www.sec.gov/Archives/edgar/data/1835591/000119312524269483/d909505d8k.htm (last accessed October 8, 2026).
[6] https://www.bloomberg.com/news/articles/2025-07-17/walmart-plans-to-sell-vizio-tvs-exclusively-as-a-private-brand (last accessed October 8, 2026);

official career page lists open positions for Vizio.[7] Accordingly, and on information and belief, since the completion of the acquisition, Vizio has been operating under Walmart's direction and control.

5. Walmart develops, designs, manufactures, distributes, markets, offers to sell, sells, and/or imports infringing products within, and to, the United States, the State of Texas, and this District, and otherwise purposefully directs infringing activities to this District in connection with its numerous retail units and supply chain facilities in this District, its walmart.com website, and its other places of business in Texas and the rest of the United States.

## JURISDICTION AND VENUE

6. This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

7. This Court has personal jurisdiction over Walmart in accordance with due process and/or the Texas Long Arm Statute at least because Walmart does business in this State by, among other things, "recruit[ing] Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." TEX. CIV. PRAC. & REM. CODE § 17.042(3). For instance, Walmart has numerous job openings in Texas as of October 8, 2026.[8]

---

https://displaydaily.com/walmart-consolidates-vizio-tvs-into-exclusive-in-house-strategy-reshaping-the-ctv-landscape/ (last accessed October 8, 2026).

[7] *See* https://careers.walmart.com/us/en/results?searchQuery= (last accessed October 8, 2026).

[8] https://careers.walmart.com/us/en/results?searchQuery= (last accessed October 8, 2026); https://www.linkedin.com/jobs/search/?currentJobId=4378096686&f_C=2646%2C1527003%2C82481809%2C40925%2C89154726%2C18632302%2C31305115%2C1467166%2C11174522%2C1559771%2C7001%2C7556%2C82099760%2C2832973&geoId=102748797&origin=JOB_S







EARCH_PAGE_LOCATION_AUTOCOMPLETE&refresh=true (last accessed October 8, 2026).




8. Furthermore, according to its LinkedIn page, Walmart has over 953 employees in Frisco and Plano, including 218 in engineering positions:[9]

---

[9] Walmart – People, https://www.linkedin.com/company/walmart/people/?facetGeoRegion=100517351%2C105918502 (last accessed October 8, 2026).




9. This Court also has personal jurisdiction over Walmart because Walmart has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the significant marketing and sale of products within this State and this District. Furthermore, upon information and belief, this Court has personal jurisdiction over Walmart because Walmart has committed acts giving rise to Atlas's claims for patent infringement within

and directed to this District and has derived substantial revenue from its goods and services provided to individuals and entities in this State and this District.

10. Walmart is also subject to personal jurisdiction in this Court because, *inter alia*, it maintains regular and established places of business in this District, including at least its numerous retail units and supply chain facilities located at, for example, 425 Coit Rd., Plano, TX 75075; 6000 Coit Rd., Plano, TX 75023; 6001 N. Central Expy., Plano, TX 75023; 8555 Preston Rd., Frisco, TX 75034; 355 Stonebrook Pkwy., Frisco, TX 75036; 16600 FM 423, Frisco, TX 75034; 12220 FM 423, Frisco, TX 75033; 16066 State Highway 121, Frisco, TX 75035; 730 W. Exchange Pkwy, Allen, TX 75013; 1701 E End Blvd N, Marshall, TX 75670; 2120 Stemmons Fwy., Sanger, TX 76266; 8660 US-79 S, Palestine, TX 75803; and 14863 Farm to Market Rd 645, Palestine, TX 75803.

11. Additionally, according to the Collin County Central Appraisal District (CAD) website, Walmart owns another location in this District at 8375 Dominion Parkway, Plano, Texas 75024.[10]

[10] Collin CAD – Property Search, https://esearch.collincad.org/ (last accessed October 8, 2026).

Property ID: 2907216 For Year 2026 Print

**Property Details**

| Account | | | |
|---|---|---|---|
| Property ID: | 2907216 | Geographic ID: P-9000-224-2301-1 | |
| Type: | P | | |
| Property Use: | | Condo: | |

| Location | |
|---|---|
| Situs Address: | 8375 DOMINION PKWY PLANO, TX 75024 |
| Map ID: | 095.N |
| Legal Description: | BPP AT DATABANK DATA CENTER |
| Abstract/Subdivision: | |
| Neighborhood: | |

| Owner | |
|---|---|
| Owner ID: | 1312164 |
| Name: | WALMART INC |
| Agent: | PROPERTY TAX ADVISORY GROUP |
| Mailing Address: | PO BOX 2457<br>SECAUCUS, NJ 07096-2457 |
| % Ownership: | 100.0% |
| Exemptions: | 145B -<br>For privacy reasons not all exemptions are shown online. |

**Property Values**

| | |
|---|---|
| Personal Property Value: | $14,157,909 |
| Market Value: | $14,157,909 |
| Assessed Value: | $14,157,909 |

Information provided for research purposes only. Legal descriptions and acreage amounts are for Appraisal District use only and should be verified prior to using for legal purpose and or documents.

12. Relative to patent infringement, Walmart has committed and continues to commit acts in violation of 35 U.S.C. § 271, and has made, used, offered for sale, sold, or imported infringing products, systems, and/or services in, and to, this State, including this District, and has otherwise engaged in infringing conduct within and directed at, or from, this District. As set out further below, such infringing products, systems, and/or services (collectively, the "Accused Instrumentalities") include any and all products Walmart makes, uses, sells, offers to sell, and/or imports that comply with, implement, support, or utilize the Wi-Fi 6 Standard. The Accused Instrumentalities have been, and continue to be, distributed to this District at least through Walmart's myriad physical locations in this District and the walmart.com website. Walmart's infringing activities have caused harm to Atlas in this District. Walmart offers to sell and sells the Accused Instrumentalities to customers within this District, and, on information and belief, Walmart and/or its customers use the Accused Instrumentalities in this District in an infringing manner.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Walmart has regular and established places of business in at least Plano, Frisco, Allen, Marshall,

Sanger, and Palestine, Texas, which are in this District. Venue is further proper in this District because Walmart has directly infringed and/or induced the infringement of others, including its customers, in this District.

## THE 802.11 STANDARD

14. Wireless Local Area Networks (WLANs) have become ubiquitous with the rise of mobile telecommunication devices. These wireless networks operate using an unlicensed band of 2.4 GHz, 5 GHz, and/or 6 GHz. The operation of WLANs is standardized by the Institute of Electrical and Electronics Engineers ("IEEE") Part 11 under the name of "Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications," also known as "Wi-Fi."

15. After an original Wi-Fi standard was published in 1999, new standard versions have been published by amendment. For example, the IEEE standard 802.11a (IEEE Std 802.11a-1999) was published in 1999, the IEEE standard 802.11b (IEEE Std 802.11b-1999) was published in 1999, and the IEEE standard 802.11g (IEEE Std 802.11g-2003) was published in 2003. Subsequently, the IEEE standard 802.11n (IEEE Std 802.11n-2009) for enhancements for higher throughput (HT) was published in 2009, and the IEEE standard 802.11 ac (IEEE 802.11 ac-2013) for enhancements for very high throughput (VHT) was published in 2013. These prior versions of the 802.11 standard are called legacy standards.

16. As wireless devices proliferated, the need arose to improve the performance of Wi-Fi in high-density scenarios. To address this issue, an IEEE task group began working on a new standard high efficiency (HE) WLAN to enhance the throughput-per-area of Wi-Fi. This standard became known as 802.11ax, commonly called "Wi-Fi 6." The first draft of the 802.11ax Standard was published in March 2016. The IEEE approved the final version of the 802.11ax-2021 Standard on February 9, 2021.

17. Wi-Fi 6 provides numerous benefits over previous Wi-Fi standards, which the industry has recognized and actively promoted. For example, Qualcomm has stated that Wi-Fi 6 provides "up to 4x increase in capacity," "higher efficiency," and "improved coverage & performance" over previous Wi-Fi standards.[11] Intel has stated that Wi-Fi 6 offers 9.6 Gbps of maximum throughput, whereas Wi-Fi 5 offers a maximum throughput of 3.5 Gbps.[12] Intel has also stated that Wi-Fi 6 can result in up to 75% less latency.[13] Cisco has stated that Wi-Fi 6 "lets access points support more clients in dense environments and provide[s] a better experience for typical wireless LAN networks."[14] Broadcom has stated that Wi-Fi 6 will allow devices to "work 6X faster," "deliver up to 7X better battery life," and "expand the Wi-Fi range up to 4X."[15] According to Broadcom, the advantages of Wi-Fi 6 relative to prior versions of the Standard include "[improving] user experience in dense environments by maximizing average speeds for a large number of devices while preserving the benefits of legacy Wi-Fi technologies, such as backwards compatibility and low cost."[16] Also according to Broadcom, Wi-Fi 6 achieves these advancements through various primary features, including Orthogonal Frequency Division Multiplexing Multiple Access (OFDMA), which increases spectrum capacity by slicing channels into smaller chunks,

---

[11] Qualcomm, *802.11ax: Transforming Wi-Fi to bring unprecedented capacity & efficiency*, available at: https://www.qualcomm.com/media/documents/files/802-11ax-wi-fi-with-unprecedented-capacity.pdf (last accessed October 8, 2026).

[12] Intel, *What is Wi-Fi 6*, available at: https://www.intel.com/content/www/us/en/gaming/resources/wifi-6.html (last accessed October 8, 2026).

[13] *Id.*

[14] Cisco, *IEEE 802.11ax: The Sixth Generation of Wi-Fi White Paper*, available at: https://www.cisco.com/c/en/us/products/collateral/wireless/white-paper-c11-740788.html. (last accessed October 8, 2026).

[15] Broadcom, *IEEE 802.11ax The Sixth Generation of Wi-Fi*, available at: https://docs.broadcom.com/doc/80211ax-WP (last accessed October 8, 2026).

[16] *Id.*

which together host multiple devices simultaneously; Multi-User MIMO (MU-MIMO) technology to increase channel capacity when simultaneously servicing multiple devices using the same frequency chunks; and smarter access points capable of providing improved outdoor connectivity through longer guard intervals.[17] Among the various improvements obtained from Wi-Fi 6, outdoor devices that implement Wi-Fi 6 can obtain increased throughput of 50% relative to prior versions of the Standard.[18]

## NEWRACOM

18. The patents-in-suit were invented and developed by engineers at Newracom, a leader and pioneer in wireless communication technology. Newracom was founded in 2014 by a group of 28 former employees of the Electronics & Telecommunications Research Institute ("ETRI"), a research institution funded by the government of Korea.

19. Newracom was a major contributor to the 802.11ax-2021 Standard, providing numerous technical contributions to that Standard which have proven to be highly beneficial in improving the bandwidth of wireless transmissions, while minimizing latency among the devices connected to the wireless local area network. Notably, Newracom has been acknowledged as one of the leaders in both number of technical submissions and the number of submissions ultimately adopted by the 802.11ax Task Group. According to an IAM Industry Report dated April 25, 2018, Newracom was recognized as the world's fourth most active technical contributor to the Wi-Fi 6

[17] *Id.*
[18] *Id.*

Standard, behind only Qualcomm, Intel, and Huawei.[19] The contributions provided by Newracom have led to over 188 United States patents relating to the Wi-Fi 6 Standard.

**DEFENDANT'S KNOWLEDGE OF NEWRACOM'S PATENTS**

20. On April 25, 2022, Atlas sent a letter to Vizio, now a wholly owned subsidiary of Walmart, through Vizio's Chief Executive Officer, William Wang, presenting Vizio with an opportunity to license Atlas's Wi-Fi 6 patent portfolio. Ex. 1. Atlas informed Vizio that the Asserted Patents "cover[] key improvements in Wi-Fi 6 adopted in the IEEE 802.11ax standard" and specifically invited Vizio to license the Asserted Patents. *Id.* On October 3, 2022, Atlas sent an email to William Wang attaching the April 25, 2022 letter, again presenting Vizio with an opportunity to license Atlas's Wi-Fi 6 patent portfolio. Ex. 2. Vizio subsequently became a wholly owned subsidiary of Walmart. Thus, Vizio's knowledge of the Asserted Patents and its infringement thereof is attributable to Walmart.

21. Further, Defendant knew of the Asserted Patents and its infringement thereof at least by May 12, 2025, when Atlas specifically notified Defendant of the Newracom Wi-Fi 6 patent portfolio. More specifically, on that date, Atlas sent Defendant letters via its President and Chief Executive Officer, John Furner, Executive Vice President and Chief Technology Officer, Hari Vasudev, Executive Vice President, Chief Legal Officer, and Corporate Secretary, Rachel Brand, and Chief IP Counsel, Sri Atluri, presenting Defendant "with an opportunity to license Standard Essential Patents in Wi-Fi 6—the latest generation of Wi-Fi technology." Exs. 3-6. Further, Atlas informed Defendant that the Asserted Patents "cover[] key improvements in Wi-Fi 6 adopted in

---

[19] *See* IAM, *IEEE's empirical record of success and innovation following patent policy updates*, available at: https://www.iam-media.com/ieees-empirical-record-success-and-innovation-following-patent-policy-updates (last accessed October 8, 2026).

the IEEE 802.11ax standard." *Id*. In those initial letters, Atlas specifically invited Defendant to license the Asserted Patents. *Id.* Defendant acknowledged receipt of those licensing letters on May 27, 2025, but specifically stated that it did not review any of the information provided (an indication of willful blindness). Ex. 7. Further, those letters reference Atlas's website that explicitly identifies each of the Asserted Patents by patent number. Exs. 3-6; https://atlasglobaltechnologies.com/us-issued-patent/ (last visited October 12, 2026).

22. Alternatively, Defendant gained knowledge of the Asserted Patents and its infringement thereof on or about April 21, 2026, when Atlas filed an action against Walmart alleging infringement of U.S. Patent Nos. 9,628,310, 10,020,919, 10,348,471, and 10,965,425, all of which are part of the Newracom Wi-Fi 6 patent portfolio. *Atlas Global Technologies, LLC v. Walmart, Inc.*, Civil No. 2:26-cv-00317, Dkt. 1 (E.D. Tex. April 21, 2026) ("Walmart I"). On information and belief, Walmart investigated the Newracom patent portfolio after being sued and learned of Newracom's patents, including the Asserted Patents.

23. At the very least, Defendant learned of the Asserted Patents and its infringements thereof as of the filing and service of this Complaint.

## THE PATENTS-IN-SUIT

24. Atlas is the sole and exclusive owner of all right, title, and interest in the '187 patent, '234 patent, '259 patent, '738 patent, and '513 patent, and holds the exclusive right to take all actions necessary to enforce its rights in and to the patents-in-suit, including the filing of this patent infringement action. Atlas also has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

25. The ’187 patent is entitled “Interleaver for Physical Layer Protocol Data Unit in a High Efficiency Wireless Lan.” The ’187 patent lawfully issued on December 27, 2016, and stems from U.S. Patent Application No. 14/823,524 filed on August 11, 2015. The ’187 patent claims priority to U.S. Provisional Application No. 62/135,094, filed on March 18, 2015. A copy of the ’187 patent is attached hereto as Ex. 8.

26. The ’234 patent is entitled “Preamble and Payload for High Efficiency (HE) Transmission.” The ’234 patent lawfully issued on May 2, 2017, and stems from U.S. Patent Application No. 15/136,830 filed on April 22, 2016. The ’234 patent claims priority to U.S. Provisional Application No. 62/152,509, filed on April 24, 2015. A copy of the ’234 patent is attached hereto as Ex. 9.

27. The ’259 patent is entitled “Sounding Method.” The ’259 patent lawfully issued on September 12, 2017, and stems from U.S. Patent Application No. 14/862,078, filed on September 22, 2015. The ’259 patent also claims priority to U.S. Provisional Application No. 62/054,270, filed on September 23, 2014. A copy of the ’259 patent is attached hereto as Ex. 10.

28. The ’738 patent is entitled “Acknowledgement Method and Multi User Transmission Method.” The ’738 patent lawfully issued on November 21, 2017, and stems from U.S. Application No. 14/678,724, filed on April 3, 2015. The ’738 patent claims priority to U.S. Provisional Application No. 61/981,427, filed on April 18, 2014; and U.S. Provisional Application No. 61/975,622, filed on April 4, 2014. A copy of the ’738 patent is attached hereto as Ex. 11.

29. The ’513 patent is entitled “System and Method for Synchronization for OFDMA Transmission.” The ’513 patent lawfully issued on March 6, 2018, and stems from U.S. Patent Application No. 15/203,717, filed on July 6, 2016, which was a continuation of U.S. Patent Application No. 14/868,303, filed on September 28, 2015, now U.S. Patent No. 9,413,581. The

’513 patent claims priority to U.S. Provisional Application No. 62/061,503, filed on October 8, 2014. A copy of the ’513 patent is attached hereto as Ex. 12.

30. The claims of the patents-in-suit are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to abstract ideas, and the technologies covered by the claims comprise systems and/or consist of ordered combinations of features and functions that, at the time of the inventions, were not, alone or in combination, well-understood, routine, or conventional.

## THE ACCUSED INSTRUMENTALITIES

31. Walmart makes, uses, sells, offers to sell, and/or imports into the United States and this District products that comply with, implement, support, or utilize the Wi-Fi 6 Standard. These include products designed and/or manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), as well as other products offered through Walmart’s stores and its walmart.com website. These products constitute the Accused Instrumentalities. The Accused Instrumentalities implement the inventions claimed in the patents-in-suit; the portions of the Wi-Fi 6 Standard covered by the patents-in-suit are mandatory, and practicing those portions of the Wi-Fi 6 Standard will necessarily infringe the claims of the patents-in-suit.

32. The Accused Instrumentalities include all products Walmart makes, uses, sells, offers to sell, and/or imports that comply with, implement, support, or utilize the Wi-Fi 6 Standard. Non-limiting examples include the following products:

| Exemplary Products | |
|---|---|
| Vizio VQM55C-1004 | Vizio VQM75C-1004 |
| Vizio VQM65C-1004 | Vizio VQD86M-0804 |
| Vizio VQD100M-0804 | Vizio VQD65M-0804 |
| Vizio V4K65M-0804 | Vizio VQD75M-0804 |

| | |
|---|---|
| Vizio V4K75M-0804 | Vizio VQD50M-0809 |
| Vizio V4K50M-0807 | Vizio V4K86C-0804 |
| Vizio VQD43M-0801 | Vizio V4K70M-0801 |
| Vizio VQD55M-0804 | Vizio M55Q6-L4 |
| Vizio M75Q6-L4 | Vizio VQP65C-84 |
| Vizio V4K43M-0801 | Vizio VQP75C-84 |
| Vizio M65Q6-L4 | Vizio V4K55M-0801 |
| Vizio M50QXM-K01 | Vizio V435M-K04 |
| Vizio VQM85C-1010 | Vizio VQD85R-1004 |
| Vizio VQD55R-1004 | Vizio VQM43C-1001 |
| Vizio VQD75R-1004 | Vizio VQD70R-1001 |
| Vizio VQD50R-1007 | Vizio VQD43R-1004 |
| Vizio VQM50C-1010 | onn 4K Pro Streaming Device |
| onn 4K Plus Streaming Device | onn Tablet Pro (2024 Model) |
| Roku Smart TV 2025 Plus Series | Roku Smart TV 2025 Pro Series |
| Roku Ultra | Roku Indoor Camera SE |
| Roku 75" Pro Series | Roku 75" Plus Series |
| Roku 65" Pro Series | Roku 65" Plus Series |
| Roku 55" Pro Series | Roku 55" Plus Series |
| Hisense 75U9N | Hisense 65U75QG |
| Hisense 100U8QG | Hisense 55U75QG |
| Hisense 55U8QG | Hisense 65U8QG |
| Hisense 100U76N | Hisense 85U8QG |

| | |
|---|---|
| Hisense 75U8QG | Hisense 100U75QG |
| Hisense 100UX | Hisense 85U9N |
| Hisense 75U75QG | Hisense 85U75QG |
| Hisense 100U7SG, 2026 Model | Hisense 85U7SG, 2026 Model |
| Hisense 75U7SG, 2026 Model | Hisense 65U7SG, 2026 Model |
| Hisense 55U7SG, 2026 Model | Linksys AX2200 Dual-Band Wi-Fi 6 Mesh Router |
| Linksys AX2200 Dual-Band Mesh WiFi 6 System | NETGEAR - AX2400 (EAX16) |
| NETGEAR RAX5 | NETGEAR Nighthawk AXE3000 |
| NETGEAR Nighthawk AX1500 Mesh System (MK6W-100NAS) | NETGEAR Nighthawk BE3100 (RS70) |
| NETGEAR AX1600 (EAX11-100NAS) | NETGEAR BE6500 |
| NETGEAR AX1800 (EAX14) | NETGEAR Nighthawk RS90 |
| NETGEAR Nighthawk AX2700 | NETGEAR Nighthawk RS130 |
| NETGEAR RAX9 | NETGEAR Nighthawk RS180 |
| NETGEAR RS140 | NETGEAR EXS27 |
| NETGEAR AX1800 Multi-Gig | NETGEAR Orbi 260 Series RBE262 |
| NETGEAR Nighthawk AX6000 (CAX80) | NETGEAR Orbi 360 Series RBE362 |
| NETGEAR Orbi Whole Home RBK753P | NETGEAR Nighthawk RS200 |
| NETGEAR Nighthawk BE9300 | NETGEAR Orbi 260 Series RBE263 |
| NETGEAR AX1800 Dual-Band Outdoor | NETGEAR Orbi 360 Series RBE363 |
| NETGEAR Nighthawk MK73S | NETGEAR Nighthawk RS500 |
| NETGEAR Nighthawk AX1800 (A7500-100PAS) | NETGEAR Nighthawk 5G M7 MH7150-100PAS |
| NETGEAR Orbi RBE873 Wi-Fi 7 IEEE 802.11be Ethernet Wireless Router | NETGEAR Nighthawk RS600 Wi-Fi 7 IEEE 802.11be Ethernet Wireless Router |

| | |
|---|---|
| NETGEAR Orbi RBE773 Ethernet Wireless Router | NETGEAR Wireless Range Extender EXS18 |
| NETGEAR Mesh Network System RBK663 | NETGEAR Wireless Range Extender EAX17 |
| TCL 98X11L | TCL 65QM8K |
| TCL 75QM8K | TCL 98QM9K |
| TCL 85QM8K | TCL 85QM9K |
| TCL 98QM8K | TCL 98X11K |
| TCL 85X11L | TCL 115QM891G |
| TCL 65QM9K | TCL 85X11K |
| TCL 75QM9K | TCL 98R754 |
| TCL 75X11L | TCL 85QM8L |
| TCL 98QM8L | TCL 65QM8L |
| TCL 75QM8L | Starlink Gen 3 Mesh Router |
| Starlink Standard 4 X | MSI Handheld CLAW A1M-052US |
| MSI Raider A18 HX A9WIG-082US | MSI All-in-One Computer PRO AP272P 14M-600US |
| MSI Vector 16" Gaming Laptop (HX AI A2XWHG-060US) | MSI All-in-One Computer Modern AM242TP 1M-1092US |
| MSI Stealth A16 AI+ A3XWHG-079US | MSI All-in-One Computer Modern AM242TP 1M-1093US |
| MSI Creator A16 AI+ 16" Creator Laptop | MSI Gaming Desktop PC Codex Z2 A8NVL-484US |
| MSI Stealth 14 AI Studio A1VFG-068US | MSI DP21 SFF PC |
| MSI Katana 15.6 inch QHD 165Hz Gaming Laptop | MSI CUBI NUC AI 1UMG-044US |
| MSI Modern 15 H C2RMTG-406US | MSI All-in-One Computer Modern AM272P 1M-821 US |
| MSI Thin A15 B7VE-214US | MSI PRO DP21 14M-1001US |
| MSI Katana 15.6 inch 144Hz Gaming Laptop | MSI PRO AP272P 14M-602US |

| | |
|---|---|
| MSI Cyborg 15 15.6" Full HD Gaming Laptop (B2RWFKG-071US) | MSI PRO DP10 13M-059US |
| MSI Creator M14 A13VF-081US | MSI CUBI NUC 1MG-011US |
| MSI Vector 16 inch QHD+ 240Hz Gaming Laptop | MSI PRO DP180 14ANVL-1021US |
| MSI Katana 15.6" Gaming Laptop B13VFK-817US | MSI Codex R2 Gaming PC Intel Core i7-14700F |
| MSI Prestige 13 AI EVO 13.3" QHD+ OLED Ultra Thin and Light Professional Laptop | MSI Codex R2 AI 2nd Codex R2 AI B2NVL5-445US |
| MSI Thin 15.6 inch FHD 144Hz Gaming Laptop | MSI PRO DP80 A14TAG-029US |
| MSI Summit E13FlipEvo A13MT-243US | MSI Cubi NUC 13MQG 223US Mini PC |
| MSI Prestige 14 EVO - 14" Professional Laptop (14Evo B13M-483US) | MSI All-in-One Computer Modern AM242TP 1M-1095US |
| MSI GF63 Thin 15.6" Gaming Laptop (11UC-692) | MSI PRO DP21 Small Form Factor Desktop |
| MSI B13VF-2829US | MSI PRO DP21 Desktop Intel Core i7-13700 |
| MSI B13UC-1000US | MSI All-in-One Computer Modern AM272P 1M-819US |
| MSI B13VE-3023US | MSI PRO AP272P -601US 27 inch All-in-One PC |
| MSI Modern 15 B13M Modern 15 B13M-1097US 15.6" Notebook | MSI All-in-One Computer Modern AM272P 1M-823US |
| MSI GF63 Thin 11UC-1276US 15.6" Gaming Laptop | MSI PRO AP272P 14M-603US |
| MSI Roamii BE Lite Mesh System | MSI CUBI 5 12M-265US |
| MSI Vision RS AI Gaming Desktop | MSI PRO DP180 14A-1025US |
| MSI PRO DP400 AI 2NVR-024US | MSI Cubi NUC 010US Mini PC |
| MSI PRO DP400 14NVP-013US | MSI Cubi 5 12M, 0.7L Intel Core i5-1235U Mini PC Barebone |
| MSI Aegis R2 Gaming Desktop Intel i5-14400F | MSI Cubi 5 NUC Mini PC - Intel Core i3-1215U |
| MSI PRO DP400 AI 2NVP-025US | MSI Cubi 5 12M-086BUS Barebone System Mini PC |

| | |
|---|---|
| MSI Aegis R2 Gaming Desktop Intel i7-14700F | MSI Cubi 5 Barebone System Mini PCs 12M-093BUS |
| MSI Codex R2 AI B2NVL7-444US Gaming Desktop Computer | MSI Cubi NUC 13MQG 203BUS Mini Barebone PC |
| MSI PRO DP180 14ANVP-1004US | MSI Cubi NUC 011BUS Mini PC Barebone |
| MSI Cyborg 15.6" 144Hz Gaming Laptop (Cyborg 15 C13WE-093US) | MSI Codex Z2 C8NVR-681US |
| MSI Vector A16 HX A8WHG-048US | MSI Crosshair 16 HX E14WGK-037US |
| MSI Cyborg A15 AI B2HWGKG-254US | MSI Cyborg 15 C2WF-253US |
| MSI Vector 16 HX AI A2XWHG-061US | MSI Codex R2 AI C2NVP7-682US |
| MSI Cyborg A15 AI B2HWEKG-252US | MSI Crosshair 16 HX E14WGK-038US |
| MSI Codex Z2C B8NVM-674US | MSI Crosshair 16 HX E14WFK-036US |
| MSI Codex Z2 C8NVL-683US | MSI Z890 GAMING WIFI6E |
| MSI Stealth A16 AI+ A3XWIG-076US | CyberPowerPC SLC7700WSTV2 |
| CyberPowerPC SLC8960CPGV20 | CyberPowerPC SLCAI8800CPG |
| CyberPowerPC SLC8000WST | CyberPowerPC SLC11040CPG |
| CyberPowerPC SLCAI9000CPG | CyberPowerPC SLC11080CPG |
| CyberPowerPC SLC11180CPG | CyberPowerPC SLC11060CPG |
| CyberPowerPC SLCAI7400CPGV2 | CyberPowerPC SLC11140CPG |
| CyberPowerPC SLC11160CPG | CyberPowerPC SLCAI7200CPGV2 |
| CyberPowerPC SLC10000CPGV22 | CyberPowerPC SLCAI6800CPGV2 |
| CyberPowerPC GXi11240CPGV19 | CyberPowerPC GMAI5000CPGV2 |
| CyberPowerPC GMAI5400CPG | CyberPowerPC GXi11240CPGV22 |
| CyberPowerPC GMA7300WST | CyberPowerPC GXi11140CPGV17 |
| CyberPowerPC GMAI6000CPG | CyberPowerPC GXi11240CPGV23 |

| | |
|---|---|
| CyberPowerPC SLC11040CPGV2 | CyberPowerPC SLC7700WST |
| CyberPowerPC SLC8000WSTV2 | CyberPowerPC SLCAI9200CPG |
| CyberPowerPC SLC11480CPG | CyberPowerPC SLC11140CPG |
| CyberPowerPC SLC11140CPGV2 | CyberPowerPC SLC11000CPGV6 |
| CyberPowerPC SLC10200CPGV19 | CyberPowerPC SLCAI10400CPG |
| CyberPowerPC SLC11000CPGV5 | CyberPowerPC SLC11380CPG |
| CyberPowerPC SLC10220CPGV21 | CyberPowerPC SLC11360CPGV2 |
| CyberPowerPC SLC11220CPG | CyberPowerPC SLC11340CPG |
| CyberPowerPC SLC11260CPG | CyberPowerPC SLC11300CPG |
| CyberPowerPC SLC11460CPG | CyberPowerPC GMAI4200CPGV2 |
| CyberPowerPC SLC8300WST | CyberPowerPC GMAI4000CPGV2 |
| CyberPowerPC SLCAI6600CPGV2 | CyberPowerPC GXi4700WST |
| CyberPowerPC SLCAI8800CPG | CyberPowerPC SLC8200WST |
| CyberPowerPC GMA7300WSTV2 | ABS Cyclone Ruby Gaming PC CR9700X5060 |
| ABS Eurus Ruby Gaming PC ER9800X3D5070TI4 | ABS Flux II Aqua Gaming PCABSWMT120A750 |
| ABS Aeolian Ruby Gaming PC AR7800X3D5070TI2 | ABS Eurus Black Gaming PC ER9800X3D50808 |
| ABS Cyclone Aqua Gaming PC CA14700F5060TI3 | ABS Talos M3 Mesh Gaming PC AR14900KF5070 |
| ABS Flux II Aqua Gaming PC ABSWMT14400B580 | ABS Cyclone Aqua Gaming PC CA265KF5070 |
| Straight Talk Home Internet Router | XPG Xenia 15G 15.6" FHD Gaming Laptop, 75260049 |
| eufy Floodlight 3K Camera E340 | Nintendo Switch 2 |
| GIGABYTE AORUS Master 18" Gaming Laptop BZHC6USD45SH | GIGABYTE AORUS Master 16" Gaming Laptop BYHC5USE64SH |

| | |
|---|---|
| GIGABYTE Gaming A16 Pro 16" Laptop DYHG5USCC4SH | GIGABYTE Gaming A16 Pro 16" Laptop DXHG4USCC4SH |
| GIGABYTE Gaming A18 18" Laptop 3WHK3USC64SH | GIGABYTE AORUS Elite 16" Gaming Laptop BWHC3USC64SH |
| GIGABYTE Gaming A16 16" Laptop CVHI3US894SH | GIGABYTE Gaming A16 16" Laptop CTHI3US894SH |
| GIGABYTE AORUS Prime 5 AP5A7N7T-5000 | Skytech Gaming ST-HARPY-3057-B-WB |
| Skytech Gaming ST-AZURE3-3056-W-WB | Skytech Gaming ST-ARCH5-3051-W-WB |
| Skytech Gaming ST-HARPY-3054-B-WB | |

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 9,532,187

33. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

34. Atlas is the owner of the ’187 patent with all substantial rights to the ’187 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

35. The ’187 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

36. The ’187 Patent generally relates to transmissions in a Wireless Local Area Network (“WLAN”) from an access point (“AP”) to a plurality of station (“STA”) devices. The AP divides the transmission channel into a plurality of resource units that are allocated to the plurality of STA devices that are the transmission recipients. The size of the resource unit allocated to each STA may be of different sizes. The AP interleaves at least some of the data that it transmits to the STAs, using interleaving parameters that may vary depending on the size of the resource unit allocated to the particular STA. Thus, a first data unit meant for a first STA in a multi-user

("MU") downlink transmission may use a first set of interleaver parameter values, while a second data unit addressed to the first station uses a second set of interleaving parameters.

***Direct Infringement (35 U.S.C. § 271(a))***

37. Walmart has directly infringed and continues to directly infringe one or more claims of the '187 patent in this District and elsewhere in Texas and the United States.

38. Walmart has infringed and continues to infringe, either by itself or via an agent, at least claims 10-14 of the '187 patent by, among other things, testing and/or using at least the Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), which practice, implement, or support the 802.11ax Standard, within the United States. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizion and Onn products), operating as station devices, have the ability to receive a Physical Layer Protocol Data Unit ("PPDU") frame that includes a plurality of data units for a plurality of station devices and deinterleave the data unit intended for the particular station device based on the size of the resource unit allocated to that station device. *See e.g.*, 802.11-2020 at § 21.3.10.8 (BCC interleaver); Table 21-17; 802.11ax-2021 at § 27.3.2.2 (Resource unit, guard, and DC subcarriers); § 27.3.12.8 (BCC interleavers); § 27.3.22 (HE receive procedure); Table 27-6; Table 27-35.

39. For example, the Wi-Fi 6 Standard requires that, in downlink (DL) multi-user (MU) transmissions, an access point device (AP) divides the transmission into a plurality of resource units (RUs) which are allocated to the plurality of station devices (STAs) respectively. *See*, *e.g.*, 802.11ax-2021 at § 27.3.1.1; § 27.3.2.2; Table 27-6. The Wi-Fi 6 Standard additionally requires that, as part of the DL MU transmissions, an AP may interleave a plurality of data units, included by the DL PPDU, for the plurality of STAs. *See*, *e.g.*, 802.11ax-2021 at § 27.3.12.8; 802.11-2020

at § 21.3.10.8. The interleaving uses interleaver parameters which are based on the size of the plurality of resource units allocated to the plurality of resource units.

**Table 27-35—BCC interleaver parameters**

| DCM | Parameter | RU size (tones) | | | | HE-SIG-A/ HE-SIG-B (tones) |
|---|---|---|---|---|---|---|
| | | 26 | 52 | 106 | 242 | 56 |
| Not used | $N_{COL}$ | 8 | 16 | 17 | 26 | 13 |
| | $N_{ROW}$ | $3 \times N_{BPSCS}$ | $3 \times N_{BPSCS}$ | $6 \times N_{BPSCS}$ | $9 \times N_{BPSCS}$ | $4 \times N_{BPSCS}$ |
| | $N_{ROT}$ | 2 | 11 | 29 | 58 | — |
| Used | $N_{COL}$ | 4 | 8 | 17 | 13 | 13 |
| | $N_{ROW}$ | $3 \times N_{BPSCS}$ | $3 \times N_{BPSCS}$ | $3 \times N_{BPSCS}$ | $9 \times N_{BPSCS}$ | $2 \times N_{BPSCS}$ |
| | $N_{ROT}$ | 2 | 2 | 11 | 29 | — |

802.11ax-2021 at Table 27-35; *see also* 802.11ax-2021 at Figure 27-19. The STAs, receiving the DL PPDU, deinterleave the data unit intended for the particular STA by using a set of interleaver parameters that differ depending on the size of the allocated resource unit. *See*, *e.g.*, 802.11ax-2021 at § 27.3.12.8; Table 27-35; 802.11-2020 at §§ 17.3.5.7, 21.3.10.8.

40. Walmart is liable for its infringement of the ’187 patent pursuant to 35 U.S.C. § 271.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

41. In addition and/or in the alternative to its direct infringements, Walmart has indirectly infringed and continues to indirectly infringe one or more claims of the ’187 patent by knowingly and intentionally inducing others to directly infringe claims 1-14 of the ’187 patent. Specifically, with respect to Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries, Walmart has induced such affiliates or subsidiaries to directly infringe one or more claims of the ’187 patent by using such Accused Instrumentalities. With respect to all

Accused Instrumentalities, Walmart has induced its customers and other end users of the Accused Instrumentalities to directly infringe by using the Accused Instrumentalities.

42. Walmart has knowledge of the '187 patent and its infringements as described in paragraphs 20-23. Since receiving notice of the '187 patent and its infringements, Walmart has actively induced, and continues to actively induce, the direct infringements of its affiliates, subsidiaries, customers, and end users as set forth above. Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '187 patent. Indeed, Walmart has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities, including, for example, advertising to its customers that it sells products that comply with the Wi-Fi 6 Standard;[20] creating and/or maintaining established distribution channels for the Accused Instrumentalities into and within the United States; manufacturing, or causing to be manufactured, Accused Instrumentalities, including Vizio and Onn products, in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its

[20] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-75-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M75Q6-L4/3897554538 (last accessed October 8, 2026) (advertising that the Vizio Class Quantum 4K QLED HDR Smart TV (M75Q6-L4) supports "WiFi 6 [to] ensures fast, reliable streaming and gaming."); https://www.walmart.com/ip/VIZIO-65-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M65Q6-L4/2513765448 (last accessed October 8, 2026) (advertising that the VIZIO 65" Class Quantum 4K QLED HDR Smart TV (M65Q6-L4) has "WiFi6 [that] supports better streaming and gaming performance…"); https://www.walmart.com/ip/NETGEAR-Dual-Band-4-Stream-AX1600-WiFi-6-Router-1-6-Gbps-RAX5/1363183437 (last accessed October 8, 2026) (advertising that Netgear RAX5 has "[f]ast AX1600 speeds with WiFi 6 technology for uninterrupted streaming, HD video gaming, and web conferencing.").

customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[21] and incorporating (or causing to be incorporated) into Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (including Vizio and Onn products) instructions in the form of executable code or logic that causes performance of claimed inventions. By providing such instructions and support, Walmart knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '187 patent.

***Damages***

43. Atlas has been damaged as a result of Walmart's infringing conduct described in this Count. Walmart is, thus, liable to Atlas in an amount that adequately compensates it for Walmart's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44. On information and belief, despite having knowledge of the '187 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '187 patent, Walmart has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Walmart's infringing activities relative to the '187 patent have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas's rights with respect to the '187 patent, justifying enhanced damages under 35 U.S.C. § 284.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 9,641,234**

45. This cause of action arises under the patent laws of the United States, and in

[21] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-70-Class-4K-UHD-LED-HDR-Smart-TV-New-V4K70M-08/5197667453? (last accessed October 8, 2026) (providing manuals and guides for VIZIO 70" Class 4K UHD LED HDR Smart TV (V4K70M-08)).

particular, 35 U.S.C. §§ 271, *et seq*.

46. Atlas is the owner of the ’234 patent with all substantial rights to the ’234 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

47. The ’234 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

48. The ’234 Patent relates to generating and receiving a trigger frame. A trigger frame comprises both an L-SIG and an HE-SIG-A field. The trigger frame contains information associated with the L-SIG and HE-SIG-A fields of a responsive uplink frame, including a first TXOP duration remaining after transmission of the trigger frame. The length value in the uplink L-SIG field and the duration value in the uplink HE-SIG-A field are based on the trigger frame. The duration field of the HE-SIG-A field in the uplink transmission is derived from the duration field in the downlink trigger frame.

***Direct Infringement (35 U.S.C. § 271(a))***

49. Walmart has directly infringed and continues to directly infringe one or more claims of the ’234 patent in this District and elsewhere in Texas and the United States.

50. Walmart has infringed and continues to infringe, either by itself or via an agent, claims 1-2 and 4-16 of the ’234 patent by, among other things, making, using, offering to sell, selling, and/or importing the Accused Instrumentalities within the United States.

51. For example, the Accused Instrumentalities, whether operating as access point devices or as station devices, comprise one or more memories, and one or more processors coupled to said memories, the processor(s) configured to cause the Accused Instrumentalities to possess the claimed capabilities.

52. The Accused Instrumentalities, when operating as access point devices, generate a trigger frame comprising a first content and a second content. The 802.11ax Standard provides for a trigger-frame format that includes a Common Info field comprising a UL Length subfield corresponding to the first content and a Duration field corresponding to the second content.




**Figure 9-64a—Trigger frame format**




**Figure 9-64b—Common Info field format**

802.11ax-2021 at § 9.3.22.1; Fig. 9-64a; 9-64b. The first content is associated with a legacy signal (L-SIG) field of an uplink frame. The 802.11ax Standard explains that "the UL Length subfield of the Common Info Field indicates the value of the L-SIG LENGTH field of the solicited HE TB PPDU." 802.11ax-2021 at § 9.3.1.22.1. The second content is associated with a high efficiency signal-A (HE-SIG-A) field of the uplink frame. The Duration field in the MAC header is associated

with the HE-SIG-A field of the uplink frame because it is used to calculate the potential duration information. *See* 802.11ax-2021 at § 26.11.5.

53. The Accused Instrumentalities operating as access point devices provide the trigger frame for transmission. As explained above, the Wi-Fi 6 Standard discloses the format of a trigger frame transmitted by an AP to an STA. 802.11ax-2021 at § 9.3.1.22.1.

54. The Accused Instrumentalities operating as access point devices receive the uplink frame in response to the trigger frame, the uplink frame comprising the L-SIG field and the HE-SIG-A field. According to the Wi-Fi 6 Standard, an AP can receive an HE TB PPDU in response to transmitting a trigger frame. The Standard explains that "this format is used for a transmission that is a response to a triggering frame from an AP." 802.11ax-2021 at § 27.3.4. An HE TB PPDU comprises an L-SIG field and an HE-SIG-A field.




**Figure 27-11—HE TB PPDU format**

8021.ax-2021 at § 27.3.4; Fig. 27-11.

55. In the Accused Instrumentalities operating as access point devices, a length in the L-SIG field of the uplink frame is based on the trigger frame. The 802.11ax Standard explains that "the UL Length subfield of the Common Info Field [in a trigger frame] indicates the value of the L-SIG LENGTH field of the solicited HE TB PPDU." 802.11ax-2021 at § 9.3.1.22.1.

56. In the Accused Instrumentalities operating as access point devices, a duration in the HE-SIG-A field of the uplink frame is based on the trigger frame. The Duration field of the trigger frame is used to calculate the potential duration information of the HE-SIG-A field in the uplink frame. *See* 802.11ax-2021 at § 26.11.5.

57. The Accused Instrumentalities operating as access point devices provide the uplink frame for processing. In the 802.11ax Standard, an AP can receive either an HE TB feedback NDP or an HE TB PPDU. 802.11ax-2021 at § 26.11.5.

58. In the Accused Instrumentalities operating as access point devices, the second content is a first transmission opportunity (TXOP) duration remaining after transmission of the trigger frame. As explained above, the second content is the Duration field in the MAC header of the trigger frame. 802.11ax-2021 at § 9.3.22.1; Fig. 9-64a. The 802.11ax Standard explains that "in a MU-RTS Trigger frame, the Duration field is set to the estimated time, in microseconds, required to transmit the pending frame(s), plus one CTS frame, plus the time to transmit the solicited HE TB PPDU if required, plus the time to transmit the acknowledgment for the solicited HE TB PPDU if required, plus applicable IFSs." 802.11ax-2021 at § 9.2.5.2. "In a MUBAR Trigger frame, BSRP Trigger frame, GCR MU-BAR Trigger frame, BQRP Trigger frame, and NFRP Trigger frame, the Duration/ID field is set to the time required to transmit the solicited HE TB PPDU plus one SIFS." 802.11ax-2021 at § 9.2.5.2. "In a Basic Trigger frame, the Duration/ID field is set to the estimated time required to transmit the solicited HE TB PPDU, plus the estimated time required to transmit the acknowledgment for the solicited HE TB PPDU if required, plus applicable SIFs." 802.11ax-2021 at § 9.2.5.2. The 802.11ax Standard also explains that "in any frame transmitted by a STA that is not the TXOP holder and is not specified by 9.2.5.1 to 9.2.5.7, the Duration/ID field is set to the value obtained from the Duration/ID field of the frame that elicited the response minus the time, in microseconds, between the end of the PPDU carrying the frame that elicited the response and the end of the PPDU carrying the frame." 802.11ax-2021 at § 9.2.5.8.

59. In the Accused Instrumentalities operating as access point devices, the duration is

a second TXOP duration remaining after transmission of the uplink frame, wherein the second TXOP duration is derived from the first TXOP duration. The claimed "duration" refers to the TXOP duration in the HE-SIG-A field of an uplink frame to the Access Point.

**Table 27-21—HE-SIG-A field of an HE TB PPDU *(continued)***

| Bit | Field | Number of bits | Description |
|---|---|---|---|
| **HE-SIG-A2 of the HE-SIG-A field** | | | |
| B0–B6 | TXOP | 7 | Set to 127 to indicate no duration information.<br><br>Set to a value less than 127 to indicate the closest minimum bound on the duration information for NAV setting and protection of the TXOP as follows:<br>If B0 is 0, the TXOP duration indicated is B1-B6, in units of 8 µs.<br>If B0 is 1, the TXOP duration indicated is B1-B6, in units of 128 µs, plus 512 µs.<br><br>See TXVECTOR parameter TXOP_DURATION. |

802.11ax-2021 at Table 27-21. The 802.11ax Standard explains that the TXOP_DURATION is based on the Duration field in the MAC header of the trigger frame. TXOP_DURATION is "equal to the duration information indicated by the Duration field of the frame that solicits the response minus the time, in microseconds, between the end of the PPDU carrying the frame that solicited the HE TB PPDU and the end of the HE TB PPDU… If the calculated potential duration information is smaller than 8448 µs, the TXVECTOR parameter TXOP_DURATION shall be set to the calculated potential duration information. Otherwise, the TXVECTOR parameter TXOP_DURATION shall be set to 8448." 802.11ax-2021 at § 26.11.5.

60. In another example, the Accused Instrumentalities operating as station devices receive a trigger frame. The 802.11ax Standard provides for a trigger-frame format that includes a Common Info field comprising a UL Length subfield and a Duration field.




**Figure 9-64a—Trigger frame format**




**Figure 9-64b—Common Info field format**

802.11ax-2021 at § 9.3.22.1; Fig. 9-64a; 9-64b.

61. The Accused Instrumentalities operating as station devices generate an uplink frame in response to the trigger frame, the uplink frame comprising the legacy L-SIG field and the non-legacy HE-SIG-A field.




**Figure 27-11—HE TB PPDU format**

802.11ax-2021 at Fig. 27-11. The Wi-Fi 6 Standard explains that that "this format is used for a

transmission that is a response to a triggering frame from an AP." 802.11ax-2021 at § 27.3.4. The HE-SIG-A field includes an indication that the responsive uplink frame uses an uplink multi-user frame format. Specifically, the one-bit Format subfield at bit B0 of HE-SIG-A1 is set to 0 to indicate an HE TB PPDU. 802.11ax-2021 at Table 27-21 ("HE-SIG-A field of an HE TB PPDU").

62. In the Accused Instrumentalities operating as station devices, the L-SIG field comprises a length of the uplink frame. The Wi-Fi 6 Standard explains that "the UL Length subfield of the Common Info Field [in a trigger frame] indicates the value of the L-SIG LENGTH field of the solicited HE TB PPDU." 802.11ax-2021 at § 9.3.1.22.1.

63. In the Accused Instrumentalities operating as station devices, the HE-SIG-A field comprises a first transmission opportunity (TXOP) duration remaining after transmission of the uplink frame. As explained by the Wi-Fi 6 Standard, the HE-SIG-A field includes a TXOP_DURATION.

**Table 27-21—HE-SIG-A field of an HE TB PPDU *(continued)***

| Bit | Field | Number of bits | Description |
|---|---|---|---|
| **HE-SIG-A2 of the HE-SIG-A field** | | | |
| B0–B6 | TXOP | 7 | Set to 127 to indicate no duration information.<br><br>Set to a value less than 127 to indicate the closest minimum bound on the duration information for NAV setting and protection of the TXOP as follows:<br>If B0 is 0, the TXOP duration indicated is B1-B6, in units of 8 µs.<br>If B0 is 1, the TXOP duration indicated is B1-B6, in units of 128 µs, plus 512 µs.<br><br>See TXVECTOR parameter TXOP_DURATION. |

802.11ax-2021 at Table 27-21. The 802.11ax Standard explains that the TXOP_DURATION is based on the Duration field in the MAC header of the trigger frame. TXOP_DURATION is "equal to the duration information indicated by the Duration field of the frame that solicits the response

minus the time, in microseconds, between the end of the PPDU carrying the frame that solicited the HE TB PPDU and the end of the HE TB PPDU… If the calculated potential duration information is smaller than 8448 µs, the TXVECTOR parameter TXOP_DURATION shall be set to the calculated potential duration information. Otherwise, the TXVECTOR parameter TXOP_DURATION shall be set to 8448." 802.11ax-2021 at § 26.11.5.

64. The Accused Instrumentalities operating as station devices provide the uplink frame for transmission. As explained by the Wi-Fi 6 Standard, an AP can receive, from an STA, either an HE TB feedback NDP or an HE TB PPDU. 802.11ax-2021 at § 26.11.5.

65. In the Accused Instrumentalities operating as station devices, the first TXOP duration is derived from a second TXOP duration that is indicated in the trigger frame. As explained above, the trigger frame includes a Duration field in its MAC header. 802.11ax-2021 at § 9.3.22.1; Fig. 9-64a. The Wi-Fi 6 Standard explains that "in a MU-RTS Trigger frame, the Duration/ID field is set to the estimated time, in microseconds, required to transmit the pending frame(s), plus one CTS frame, plus the time to transmit the solicited HE TB PPDU if required, plus the time to transmit the acknowledgment for the solicited HE TB PPDU if required, plus applicable IFSs." 802.11ax-2021 at § 9.2.5.2. "In a MU-BAR Trigger frame, BSRP Trigger frame, GCR MU-BAR Trigger frame, BQRP Trigger frame, and NFRP Trigger frame, the Duration/ID field is set to the time required to transmit the solicited HE TB PPDU plus one SIFS." 802.11ax-2021 at § 9.2.5.2. "In a Basic Trigger frame, the Duration/ID field is set to the estimated time required to transmit the solicited HE TB PPDU, plus the estimated time required to transmit the acknowledgment for the solicited HE TB PPDU if required, plus applicable SIFs." 802.11ax-2021 at § 9.2.5.2. The Wi-Fi 6 Standard also explains that "in any frame transmitted by a STA that is not the TXOP holder and is not specified by 9.2.5.1 to 9.2.5.7, the Duration/ID field is set to the

value obtained from the Duration/ID field of the frame that elicited the response minus the time, in microseconds, between the end of the PPDU carrying the frame that elicited the response and the end of the PPDU carrying the frame." 802.11ax-2021 at § 9.2.5.8.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

66. In addition and/or in the alternative to its direct infringements, Walmart has indirectly infringed and continues to indirectly infringe one or more claims of the '234 patent by knowingly and intentionally inducing others to directly infringe claims 1-2 and 4-16 of the '234 patent. Specifically, with respect to Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries, Walmart has induced such affiliates or subsidiaries to directly infringe one or more claims of the '234 patent by making and using such Accused Instrumentalities. With respect to all Accused Instrumentalities, Walmart has induced its customers and other end users of the Accused Instrumentalities to directly infringe by using the Accused Instrumentalities.

67. Walmart has knowledge of the '234 patent and its infringements as described in paragraphs 20-23. Since receiving notice of the '234 patent and its infringements, Walmart has actively induced, and continues to actively induce, the direct infringements of its affiliates, subsidiaries, customers, and end users as set forth above. Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '234 patent. Indeed, Walmart has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities, including, for example, advertising to its

customers that it sells products that comply with the Wi-Fi 6 Standard;[22] creating and/or maintaining established distribution channels for the Accused Instrumentalities into and within the United States; manufacturing, or causing to be manufactured, Accused Instrumentalities, including Vizio and Onn products, in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[23] and incorporating (or causing to be incorporated) into Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (including Vizio and Onn products) instructions in the form executable code or logic that causes performance of claimed inventions. By providing such instructions and support, Walmart knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '234 patent.

***Damages***

68. Atlas has been damaged as a result of Walmart's infringing conduct described in this Count. Walmart is, thus, liable to Atlas in an amount that adequately compensates it for

[22] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-75-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M75Q6-L4/3897554538 (last accessed October 8, 2026) (advertising that the Vizio Class Quantum 4K QLED HDR Smart TV (M75Q6-L4) supports "WiFi 6 [to] ensures fast, reliable streaming and gaming."); https://www.walmart.com/ip/VIZIO-65-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M65Q6-L4/2513765448 (last accessed October 8, 2026) (advertising that the VIZIO 65" Class Quantum 4K QLED HDR Smart TV (M65Q6-L4) has "WiFi6 [that] supports better streaming and gaming performance…"); https://www.walmart.com/ip/NETGEAR-Dual-Band-4-Stream-AX1600-WiFi-6-Router-1-6-Gbps-RAX5/1363183437 (last accessed October 8, 2026) (advertising that Netgear RAX5 has "[f]ast AX1600 speeds with WiFi 6 technology for uninterrupted streaming, HD video gaming, and web conferencing.").

[23] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-70-Class-4K-UHD-LED-HDR-Smart-TV-New-V4K70M-08/5197667453? (last accessed October 8, 2026) (providing manuals and guides for VIZIO 70" Class 4K UHD LED HDR Smart TV (V4K70M-08)).

Walmart's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

69. On information and belief, despite having knowledge of the '234 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '234 patent, Walmart has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Walmart's infringing activities relative to the '234 patent have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas's rights with respect to the '234 patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 9,763,259

70. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

71. Atlas is the owner of the '259 patent with all substantial rights to the '259 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

72. The '259 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

73. The '259 Patent relates to multi-user ("MU") sounding and feedback in a wireless network. MU transmission requires channel information for the devices to access their subchannels that have been assigned by an Access Point ("AP"). Non-AP Stations ("STA") support and implement a sounding method in which subchannel allocation information is received from an AP on the wireless network, after which a compressed beamforming report is sent from the STA to the AP while a second compressed beamforming report is sent from a second STA.

***Direct Infringement (35 U.S.C. § 271(a))***

74. Walmart has directly infringed and continues to directly infringe one or more claims of the ’259 patent in this District and elsewhere in Texas and the United States.

75. Walmart has infringed and continues to infringe, either by itself or via an agent, claims 1-7 of the ’259 patent by, among other things, testing and/or using at least the Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), which practice, implement, or support the 802.11ax Standard, within the United States. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, have the ability to receive multi-user (“MU”) downlink (“DL”) transmissions on the wireless network and the ability to transmit MU uplink (“UL”) feedback frames simultaneously with a plurality of other STA devices. *See*, *e.g.*, 802.11ax-2021 at § 26.7.2 (HE Sounding Protocol); Figures 9-61a (HE NDP Announcement frame format), 9-61b (STA info field in an HE NDP Announcement frame), 26-8 (Example of HE TB sounding).

76. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, receive during normal intended operation a null data packet announcement (“NDPA”) frame from an AP device. The NDPA frame identifies the receiving STAs and, through the Partial BW Info subfield in each STA Info field, designates the frequency range for which that STA is to report channel measurements. When full-bandwidth feedback is requested, each STA’s report includes information measured on subcarriers within its allocated transmission RU, as well as information measured on other subcarriers within the requested bandwidth. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as

station devices, then receive a null data packet ("NDP") frame from the AP after receiving the NDPA frame. The NDP provides the training signal used by the STAs to measure the channel. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, then receive a beamforming report poll (BFRP) Trigger frame from the AP that specifies, through the RU Allocation subfield in each STA's User Info field, the RU allocated to that STA for transmitting its feedback report and solicits the STAs' simultaneous feedback transmissions. After receiving the NDP frame, the Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, are designed to transmit simultaneously to the AP a feedback frame that includes a beamforming report providing subchannel information measured on a the subchannel that is allocated to the STA from among a plurality of subchannels into which a band is divided. Thus, a first subchannel is a subchannel that has been allocated to the STAs by an AP from among a plurality of subchannels through which signal transmissions may occur. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, are designed such that, when transmitting the feedback frame, a first STA will transmit the feedback frame providing beamforming information regarding the first subchannel while a second STA simultaneously transmits a second feedback frame including subchannel information measured on a second subchannel by a second STA, the second subchannel being a subchannel that has been allocated to the second STA from among the plurality of subchannels. For subsequent data transmissions, the AP also signals RU assignments to the STAs through the HE-SIG-B field of a downlink HE MU PPDU, identifying the resources assigned to each STA within that transmission. The AP further allocates RUs through

the User Info fields of subsequent Trigger frames for the STAs' responsive uplink HE TB PPDU transmissions.

77. For example, Figure 26-8 of the Wi-Fi 6 Standard shows an AP (referred to as a "HE beamformer"), transmitting a null data packet announcement frame to a plurality of STA devices (referred to as "HE beamformees"), such as the Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), followed by a null data packet frame (referred to as "HE sounding NDP"). The AP then transmits a BFRP Trigger frame and receives simultaneous feedback frames (referred to as "HE Compressed Beamforming/CQIs") from the STAs. The HE Compressed Beamforming/CQI frames contain information about the subchannel, including the average signal-to-noise ratio and beamforming feedback matrices. *See* 802.11ax-2021 at § 9.4.1.65 (HE Compressed Beamforming Report Field).




**Figure 26-8—Example of HE TB sounding**

802.11ax-2021 at Fig. 26-8.

78. Walmart is liable for its infringement of the '259 patent pursuant to 35 U.S.C. § 271.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

79. In addition and/or in the alternative to its direct infringements, Walmart has indirectly infringed and continues to indirectly infringe one or more claims of the ’259 patent by knowingly and intentionally inducing others to directly infringe claims 1-7 and 18 of the ’259 patent. Specifically, with respect to Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries, Walmart has induced such affiliates or subsidiaries to directly infringe one or more claims of the ’259 patent by using such Accused Instrumentalities. With respect to all Accused Instrumentalities, Walmart has induced its customers and other end users of the Accused Instrumentalities to directly infringe by using the Accused Instrumentalities.

80. Walmart has knowledge of the ’259 patent and its infringements as described in paragraphs 20-23. Since receiving notice of the ’259 patent and its infringements, Walmart has actively induced, and continues to actively induce, the direct infringements of its affiliates, subsidiaries, customers, and end users as set forth above. Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the ’259 patent. Indeed, Walmart has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities, including, for example, advertising to its customers that it sells products that comply with the Wi-Fi 6 Standard;[24] creating and/or

---

[24] *See, e.g.*, https://www.walmart.com/ip/VIZIO-75-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M75Q6-L4/3897554538 (last accessed October 8, 2026) (advertising that the Vizio Class Quantum 4K QLED HDR Smart TV (M75Q6-L4) supports “WiFi 6 [to] ensures fast, reliable streaming and gaming.”); https://www.walmart.com/ip/VIZIO-65-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M65Q6-L4/2513765448 (last accessed October 8, 2026) (advertising that

maintaining established distribution channels for the Accused Instrumentalities into and within the United States; manufacturing, or causing to be manufactured, Accused Instrumentalities, including Vizio and Onn products, in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[25] and incorporating (or causing to be incorporated) into Accused Instrumentalities manufactured by Walmart or one of its subsidiaries (including Vizio and Onn products) instructions in the form executable code or logic that causes performance of claimed inventions. By providing such instructions and support, Walmart knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the ’259 patent.

***Damages***

81. Atlas has been damaged as a result of Walmart’s infringing conduct described in this Count. Walmart is, thus, liable to Atlas in an amount that adequately compensates it for Walmart’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

---

the VIZIO 65” Class Quantum 4K QLED HDR Smart TV (M65Q6-L4) has “WiFi6 [that] supports better streaming and gaming performance…”); https://www.walmart.com/ip/NETGEAR-Dual-Band-4-Stream-AX1600-WiFi-6-Router-1-6-Gbps-RAX5/1363183437 (last accessed October 8, 2026) (advertising that Netgear RAX5 has “[f]ast AX1600 speeds with WiFi 6 technology for uninterrupted streaming, HD video gaming, and web conferencing.”).

[25] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-70-Class-4K-UHD-LED-HDR-Smart-TV-New-V4K70M-08/5197667453? (last accessed October 8, 2026) (providing manuals and guides for VIZIO 70” Class 4K UHD LED HDR Smart TV (V4K70M-08)).

82. On information and belief, despite having knowledge of the ’259 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the ’259 patent, Walmart has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Walmart’s infringing activities relative to the ’259 patent have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas’s rights with respect to the ’259 patent, justifying enhanced damages under 35 U.S.C. § 284.

**COUNT IV**
**INFRINGEMENT OF U.S. PATENT NO. 9,825,738**

83. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

84. Atlas is the owner of the ’738 patent with all substantial rights to the ’738 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

85. The ’738 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

86. The ’738 Patent is directed to improvements related to triggering frames, which are used to solicit and schedule simultaneous transmissions from multiple user devices on a wireless local area network. The concept of transmitting trigger frames to solicit and synchronize multi-user uplink frames was first introduced into the wireless standard as part of 802.11ax, and Newracom was a key contributor to those concepts. The ’738 Patent covers a method of operating a station device in a wireless network in which an access point transmits a physical downlink frame to a plurality of stations and receives simultaneous uplink transmissions from multiple stations. The physical downlink frame received by the STA contains uplink setup information and downlink data. The setup information received by the STA includes information that is common to the

multiple stations joining in the uplink multi-user transmission. The setup information also includes dedicated information that is specific to each responding station. The common information includes information that is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frames by each of the stations participating in the uplink multi-user transmission. The STA transmits an uplink frame to the AP in response to receiving the uplink setup information simultaneously with uplink frames from one or more other stations in the wireless network (referred to as an uplink multi-user or "UL MU" frame). After transmitting the uplink multi-user frame to the AP, the STA receives an acknowledgement frame from the AP acknowledging receipt of the uplink multi-user frame. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, are configured and designed to receive the aforementioned physical downlink frame, transmit the aforementioned UL MU frames, and receive the aforementioned acknowledgment frame, and they do in fact receive and transmit those frames during normal use as intended by Defendant.

***Direct Infringement (35 U.S.C. § 271(a))***

87. Walmart has directly infringed and continues to directly infringe one or more claims of the '738 patent in this District and elsewhere in Texas and the United States.

88. Walmart has infringed and continues to infringe, either by itself or via an agent, at least claims 9-16 of the '738 patent by, among other things, testing and/or using at least the Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), which practice, implement, or support the 802.11ax Standard, within the United States. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, have the ability to

receive from an AP a physical downlink frame containing downlink data and a Trigger frame, the Trigger frame including both a common information field and dedicated information specific to the responding stations, and the ability to transmit an MU uplink frame to the AP. *See*, *e.g.*, 802.11ax-2021 at § 4.3.15a (High Efficiency (HE) STA); § 9.3.1.22 (Trigger Frame format); § 10.3.2.13.3 (Acknowledgement Procedure for an UL MU Transmission); § 27.3.11.10 (HE-LTF); Figure 9-64a (Trigger frame format); Figure 9-64b (Common info field format); Figure 9-64d (User Info field format); Figure 10-14b; and Figure 10-14c.

89. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, receive during normal intended operation physical downlink frames from a Wi-Fi 6 compliant AP, each containing downlink data and uplink setup information provided by a Trigger frame. The Trigger frames carried in those physical downlink frames include uplink setup information comprising a common information portion that is common to all of the plurality of STAs, and a dedicated user info list portion that is specific to a particular STA. The common information portion is a function of the total number of space time streams that the STAs will use to transmit the UL MU frames. The Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, then transmit a HE TB PPDU uplink frame to the AP, and the Accused STA Products then receive a BlockAck acknowledgement from the AP.

90. For example, Figure 10-14c of the Wi-Fi 6 Standard shows an AP transmitting a DL trigger frame to a plurality of STAs, such as Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), receiving HE TB PPDUs from each STA, and then transmitting a multi STA BlockAck acknowledgment.




**Figure 10-14c—Example of UL MU transmissions with immediate Multi-STA BlockAck frame acknowledging MPDUs**

802.11ax-2021 at Fig. 10-14c. Figure 9-64a of the Wi-Fi 6 Standard shows the format of the trigger frame that the Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries (such as Vizio and Onn products), operating as station devices, receive from an AP. Notably, it includes uplink setup information with a common information portion (labeled "Common Info") that is common to all of the plurality of STAs that receive the trigger frame, and a dedicated information portion (labeled "User Info List") that is specific to the particular STAs that receive the trigger frame.




**Figure 9-64a—Trigger frame format**

802.11ax-2021 at Fig. 9-64a. Figure 9-64b shows the contents of the Common Info subfield, including the Number of HE-LTF Symbols and Midamble Periodicity subfield.

The Common Info field is defined in Figure 9-64b.




**Figure 9-64b—Common Info field format**

802.11ax-2021 at Fig. 9-64b. As its name suggests, that subfield indicates the number of HE-LTF symbols present in the responsive HE TB PPDUs, which is a function of the total number of space-time streams. *See* 802.11ax-2021 at § 27.3.11.10 (HE-LTF Field); § 27.3.4 (HE PPDU Formats); Table 21-13 (Number of VHT-LTFs Required for Different Numbers of Space-Time Streams).

91. Walmart is liable for its infringement of the ’738 patent pursuant to 35 U.S.C. § 271.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

92. In addition and/or in the alternative to its direct infringements, Walmart has indirectly infringed and continues to indirectly infringe one or more claims of the ’738 patent by knowingly and intentionally inducing others to directly infringe claims 1-16 of the ’738 patent. Specifically, with respect to Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries, Walmart has induced such affiliates or subsidiaries to directly infringe one or more claims of the ’738 patent by using such Accused Instrumentalities. With respect to all

Accused Instrumentalities, Walmart has induced its customers and other end users of the Accused Instrumentalities to directly infringe by using the Accused Instrumentalities.

93. Walmart has knowledge of the ’738 patent and its infringements as described in paragraphs 20-23. Since receiving notice of the ’738 patent and its infringements, Walmart has actively induced, and continues to actively induce, the direct infringements of its affiliates, subsidiaries, customers, and end users as set forth above. Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the ’738 patent. Indeed, Walmart has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities, including, for example, advertising to its customers that it sells products that comply with the Wi-Fi 6 Standard;[26] creating and/or maintaining established distribution channels for the Accused Instrumentalities into and within the United States; manufacturing, or causing to be manufactured, Accused Instrumentalities, including Vizio and Onn products, in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its

---

[26] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-75-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M75Q6-L4/3897554538 (last accessed October 8, 2026) (advertising that the Vizio Class Quantum 4K QLED HDR Smart TV (M75Q6-L4) supports “WiFi 6 [to] ensures fast, reliable streaming and gaming.”); https://www.walmart.com/ip/VIZIO-65-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M65Q6-L4/2513765448 (last accessed October 8, 2026) (advertising that the VIZIO 65” Class Quantum 4K QLED HDR Smart TV (M65Q6-L4) has “WiFi6 [that] supports better streaming and gaming performance…”); https://www.walmart.com/ip/NETGEAR-Dual-Band-4-Stream-AX1600-WiFi-6-Router-1-6-Gbps-RAX5/1363183437 (last accessed October 8, 2026) (advertising that Netgear RAX5 has “[f]ast AX1600 speeds with WiFi 6 technology for uninterrupted streaming, HD video gaming, and web conferencing.”).

customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[27] and incorporating (or causing to be incorporated) into Accused Instrumentalities manufactured by Walmart or one of its subsidiaries (including Vizio and Onn products) instructions in the form executable code or logic that causes performance of claimed inventions. By providing such instructions and support, Walmart knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '738 patent.

***Damages***

94. Atlas has been damaged as a result of Walmart's infringing conduct described in this Count. Walmart is, thus, liable to Atlas in an amount that adequately compensates it for Walmart's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

95. On information and belief, despite having knowledge of the '738 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '738 patent, Walmart has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Walmart's infringing activities relative to the '738 patent have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas's rights with respect to the '738 patent, justifying enhanced damages under 35 U.S.C. § 284.

**COUNT V**
**INFRINGEMENT OF U.S. PATENT NO. 9,912,513**

96. This cause of action arises under the patent laws of the United States, and in

[27] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-70-Class-4K-UHD-LED-HDR-Smart-TV-New-V4K70M-08/5197667453? (last accessed October 8, 2026) (providing manuals and guides for VIZIO 70" Class 4K UHD LED HDR Smart TV (V4K70M-08)).

particular, 35 U.S.C. §§ 271, *et seq*.

97. Atlas is the owner of the ’513 patent with all substantial rights to the ’513 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

98. The ’513 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

99. The ’513 Patent generally relates to 802.11ax downlink (“DL”) trigger frames sent by access points and received by stations that indicate the guard interval duration of the expected uplink (“UL”) responsive frames sent by the stations. In uplink MU OFDMA, stations may simultaneously transmit uplink frames containing OFDM symbols. The OFDM symbols include guard intervals implemented as a cyclic prefix. But if the guard interval durations are not uniform amongst all the stations, the symbols will not be synchronized, and the access point may have greater difficulty correctly decoding the frames received from the stations. To ensure all the stations use the same guard interval duration, the access point may transmit a trigger frame with information for a guard interval (“GI”) duration to be used for at least some symbols of a subsequent UL frame.

***Direct Infringement (35 U.S.C. § 271(a))***

100. Walmart has directly infringed and continues to directly infringe one or more claims of the ’513 patent in this District and elsewhere in Texas and the United States.

101. Walmart has infringed and continues to infringe, either by itself or via an agent, claims 1-14 of the ’513 patent by, among other things, making, using, offering to sell, selling, and/or importing the Accused Instrumentalities operating as station devices that practice, implement, or support the 802.11ax Standard, within the United States. The Accused

Instrumentalities operating as station devices have the ability to receive trigger frames that allocate resources and indicate guard intervals for subsequent uplink multi-user transmissions. *See*, *e.g.*, 802.11ax-2021 at § 9.3.1.22 (Trigger frame format); Figure 9-64a (Trigger frame format); Figure 9-64b (Common info field format); Figure 9-64d (User info field format). These functions are a mandatory part of the Wi-Fi 6 Standard.

102. The Accused Instrumentalities operating as station devices receive a trigger frame during normal and intended operation. That trigger frame has a Common Info field with a GI and HE LTF Type subfield that indicates the common guard interval for the STA's subsequent uplink multi-user transmission. That trigger frame also has a User Info List field with a RU Allocation subfield that allocates resources for and solicits the STA's subsequent uplink multi-user transmission. The Accused Instrumentalities operating as station devices then generate and transmit an HE TB PPDU comprising a PHY header and a payload, using a resource allocated by the trigger frame. Each OFDM symbol in the HE-Data field carrying the payload includes a cyclic prefix having the guard interval duration indicated by the trigger frame.

103. For example, Figures 9-64a, 9-64b, and 9-64d (amalgamated below) of the Wi-Fi 6 Standard show certain fields and subfields of a trigger frame that is received by the Accused Instrumentalities operating as station devices.




**Figure 9-64a—Trigger frame format**

The Common Info field is defined in Figure 9-64b.




**Figure 9-64b—Common Info field format**




**Figure 9-64d—User Info field format**

802.11ax-2021 at Figs. 9-64a, 9-64b, 9-64d. Table 9-29e of the Wi-Fi 6 Standard shows that the GI and HE-LTF subfield of the trigger frame set the guard interval—either 1.6 µs or 3.2 µs—used for the STAs' responsive HE TB PPDUs.

**Table 9-29e—GI And HE-LTF Type subfield encoding**

| GI And HE-LTF Type subfield value | Description |
|---|---|
| 0 | 1x HE-LTF + 1.6 µs GI |
| 1 | 2x HE-LTF + 1.6 µs GI |
| 2 | 4x HE-LTF + 3.2 µs GI |
| 3 | Reserved |

802.11ax-2021 at Table 9-29e. Table 9-29i of the Wi-Fi 6 Standard further shows that the RU Allocation subfield of the Trigger frame allocates resources for a particular STA's responsive HE TB PPDU.

**Table 9-29i—B7–B1 of the RU Allocation subfield**

| B7–B1 of the RU Allocation subfield | UL BW subfield | RU size | RU Index |
|---|---|---|---|
| 0–8 | 20 MHz, 40 MHz, 80 MHz, 80+80 MHz or 160 MHz | 26 | RU1 to RU9, respectively |
| 9–17 | 40 MHz, 80 MHz, 80+80 MHz or 160 MHz | | RU10 to RU18, respectively |
| 18–36 | 80 MHz, 80+80 MHz or 160 MHz | | RU19 to RU37, respectively |
| 37–40 | 20 MHz, 40 MHz, 80 MHz, 80+80 MHz or 160 MHz | 52 | RU1 to RU4, respectively |
| 41–44 | 40 MHz, 80 MHz, 80+80 MHz or 160 MHz | | RU5 to RU8, respectively |
| 45–52 | 80 MHz, 80+80 MHz or 160 MHz | | RU9 to RU16, respectively |

802.11ax-2021 Table 9-29i.

104. Walmart is liable for its infringement of the '513 patent pursuant to 35 U.S.C. § 271.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

105. In addition and/or in the alternative to its direct infringements, Walmart has indirectly infringed and continues to indirectly infringe one or more claims of the '513 patent by knowingly and intentionally inducing others to directly infringe claims 1-19 of the '513 patent. Specifically, with respect to Accused Instrumentalities manufactured by Walmart or one of its affiliates or subsidiaries, Walmart has induced such affiliates or subsidiaries to directly infringe one or more claims of the '513 patent by making and using such Accused Instrumentalities. With

respect to all Accused Instrumentalities, Walmart has induced its customers and other end users of the Accused Instrumentalities to directly infringe by using the Accused Instrumentalities.

106. Walmart has knowledge of the ’513 patent and its infringements as described in paragraphs 20-23. Since receiving notice of the ’513 patent and its infringements, Walmart has actively induced, and continues to actively induce, the direct infringements of its affiliates, subsidiaries, customers, and end users as set forth above. Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the ’513 patent. Indeed, Walmart has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Instrumentalities, including, for example, advertising to its customers that it sells products that comply with the Wi-Fi 6 Standard;[28] creating and/or maintaining established distribution channels for the Accused Instrumentalities into and within the United States; manufacturing, or causing to be manufactured, Accused Instrumentalities, including Vizio and Onn products, in conformity with U.S. laws and regulations; providing technical documentation and tools for the Accused Instrumentalities that, among other things, instruct its

---

[28] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-75-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M75Q6-L4/3897554538 (last accessed October 8, 2026) (advertising that the Vizio Class Quantum 4K QLED HDR Smart TV (M75Q6-L4) supports “WiFi 6 [to] ensures fast, reliable streaming and gaming.”); https://www.walmart.com/ip/VIZIO-65-Class-Quantum-4K-QLED-HDR-Smart-TV-NEW-M65Q6-L4/2513765448 (last accessed October 8, 2026) (advertising that the VIZIO 65” Class Quantum 4K QLED HDR Smart TV (M65Q6-L4) has “WiFi6 [that] supports better streaming and gaming performance…”); https://www.walmart.com/ip/NETGEAR-Dual-Band-4-Stream-AX1600-WiFi-6-Router-1-6-Gbps-RAX5/1363183437 (last accessed October 8, 2026) (advertising that Netgear RAX5 has “[f]ast AX1600 speeds with WiFi 6 technology for uninterrupted streaming, HD video gaming, and web conferencing.”).

customers to connect the Accused Instrumentalities to Wi-Fi networks to practice the Wi-Fi 6 Standard;[29] and incorporating (or causing to be incorporated) into Accused Instrumentalities manufactured by Walmart or one of its subsidiaries (including Vizio and Onn products) instructions in the form executable code or logic that causes performance of claimed inventions. By providing such instructions and support, Walmart knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the ’513 patent.

***Damages***

107. Atlas has been damaged as a result of Walmart’s infringing conduct described in this Count. Walmart is thus liable to Atlas in an amount that adequately compensates it for Walmart’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

108. On information and belief, despite having knowledge of the ’513 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the ’513 patent, Walmart has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Walmart’s infringing activities relative to the ’513 patent s have been, and continue to be, willful, wanton, and deliberate in disregard of Atlas’s rights with respect to the ’513 patent, justifying enhanced damages under 35 U.S.C. § 284.

## CONCLUSION

109. Atlas is entitled to recover from Walmart the damages sustained by Atlas as a result

---

[29] *See*, *e.g.*, https://www.walmart.com/ip/VIZIO-70-Class-4K-UHD-LED-HDR-Smart-TV-New-V4K70M-08/5197667453? (last accessed October 8, 2026) (providing manuals and guides for VIZIO 70” Class 4K UHD LED HDR Smart TV (V4K70M-08)).

of Walmart's wrongful acts and willful infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

110. Atlas has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and, in such case, Atlas is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## DEMAND FOR A JURY TRIAL

111. Atlas hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Atlas respectfully requests that this Court enter judgment in its favor and grant the following relief:

(i) Judgment and Order that Walmart has directly and/or indirectly infringed one or more claims of each of the patents-in-suit;

(ii) Judgment and Order that Walmart must pay Atlas past and future damages under 35 U.S.C. § 284, including supplemental damages arising from any continuing, post-verdict infringement for the time between trial and entry of the final judgment, together with an accounting, as needed, as provided under 35 U.S.C. § 284;

(iii) Judgment and Order that Walmart must pay Atlas reasonable ongoing royalties on a go-forward basis after Final Judgment;

(iv) Judgment and Order that Walmart's infringement of the patents-in-suit have been willful from the time that Walmart became aware of the infringing nature of its

products, and that the Court award treble damages pursuant to 35 U.S.C. § 284;

(v) Judgment and Order that Walmart must pay Atlas pre-judgment and post-judgment interest on the damages award;

(vi) Judgment and Order that Walmart must pay Atlas's costs;

(vii) Judgment and Order that the Court find this case exceptional under the provisions of 35 U.S.C. § 285 and, accordingly, order Walmart to pay Atlas's attorneys' fees; and

(viii) Such other and further relief as the Court may deem just and proper.

Dated: October 12, 2026

Respectfully submitted,

*/s/ Edward R. Nelson III*

Edward R. Nelson III
State Bar No. 00797142
ed@nelbum.com
Christopher G. Granaghan
State Bar No. 24078585
chris@nelbum.com
Carder W. Brooks
State Bar No. 24105536
carder@nelbum.com
Jinming Zhang
Virginia Bar No. 96210
jinming@nelbum.com
**Nelson Bumgardner Conroy PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111

**COUNSEL FOR PLAINTIFF ATLAS GLOBAL TECHNOLOGIES LLC**